# No. 23-1337

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**JAVIER DEL RIO, COLIN MEUNIER, and AARON DELAROCHE,** *on behalf of themselves and other similarly situated Employees*,

Plaintiffs - Appellants,

v.

**AMAZON.COM.DEDC, LLC, AMAZON.COM, INC., AMAZON.COM SERVICES, LLC**

Defendants – Appellees,

**AMAZON.COM SERVICES, INC.,**

Defendant.

On Appeal from the United States District Court
For the District of Connecticut
Case No. 3:21-cv-01152-KAD
The Honorable Kari A. Dooley

**BRIEF OF PLAINTIFFS-APPELLANTS**

Richard E. Hayber, Esq.
**HAYBER, McKENNA & DINSMORE, LLC**
750 Main Street, Suite 904
Hartford, CT 06103
Tel. (860) 522-8888
rhayber@hayberlawfirm.com

*Attorney for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ............................................................ iii

I.    JURISDICTIONAL STATEMENT .................................................1

    A.    Basis for the District Court's Subject Matter Jurisdiction ...................1

    B.    Basis for the Court of Appeals' Jurisdiction .........................................1

    C.    This Appeal is Timely ...........................................................................2

    D.    This Appeal is From A Final Order or Judgment That Disposes of All Parties' Claims...................................................................................2

II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...................2

III.    STATEMENT OF THE CASE ..........................................................2

    A.    Facts Relevant to the Issues Submitted for Review .............................3

        1.    Amazon's Connecticut Fulfillment Centers...............................3

        2.    The Security Screening Procedures at BDL2 ...........................3

            a.    Amazon's Requirements for Employees Entering the Premises...................................................................................3

            b.    Amazon's Mandatory Security Procedures at the End of Plaintiffs' Shifts .............................................................4

    B.    Relevant Procedural History ................................................................5

    C.    Ruling Presented for Review.................................................................7

IV.    SUMMARY OF THE ARGUMENT.....................................................7

V.    ARGUMENT................................................................................8

    A.    Applicable Standard of Review.............................................................8

B.     Appellants' Contentions and the Reasons for Them ........................... 8

     1.     The District Court Erroneously Concluded that "the Relevant Definition at Issue is not 'Hours Worked' but Rather 'Work'" .................................................................................. 10

     2.     The District Court Failed to Follow the "Plain Meaning" Rule of C.G.S. 1-2z .......................................................................... 14

     3.     The District Court Erroneously Inferred that the General Assembly "intended" to Silently and Implicitly Engraft the Rules of the Federal PTPA into Connecticut's Wage Laws ...... 16

          a.     Connecticut Courts Do Not Interpret Connecticut Wage Laws Co-extensively with Federal Wage Laws When the Language of Connecticut Law Differs From Federal Law ................................................................................ 17

          b.     The General Assembly Excluded the PTPA When Enacting Connecticut's Wage Laws ............................... 20

VI.     CONCLUSION STATING THE PRECISE RELIEF SOUGHT ................. 29

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Amaya v. DGS Construction, LLC*,
479 Md. 515 (2022) ............................................................... 8, 11-12, 22

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)................................................................... 7, 15-16

*Anderson v. State, Dep't of Soc. & Health Servs.*,
63 P.3d 134, 136 (Wash. App. 2003) ...................................................22

*Belgada v. Hy's Livery Serv. Inc. – cite to the 2023 decision?*
220 Conn. App. 102 (2023) .......................................................... 11-13

*Buero v. Amazon.com Services, Inc.*,
61 F.4th 1031 (9th Cir. 2023)..............................................................28

*Gerber Prod. Co. v. Hewitt*,
492 S.W.3d 856, 863-64 (Ark. 2016) ...................................................23

*Hughes v. UPS Supply Chain Sols., Inc.*,
2023 WL 5444612, *3-6, -- S.W.3d --- (Ky. Aug. 24, 2023)............................28

*In re: Amazon.com, Inc.*,
255 A.3d 191, 202 (Pa. 2021) ....................................................8, 12, 25

*In re Amazon.com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) Wage and Hour Litig.*,
852 F.3d 601, 605 (6th Cir. 2017)........................................................27

*In re: Amazon.com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) Wage and Hour Ltigation*,
905 F. 3d 387, 402 (6th Cir. 2018)........................................21-24, 27-28

*Integrity Staffing Sols., Inc. v. Busk*.
574 U.S. 27 (2014)...................................................... 6, 13, 15, 25-26

*Morillion v. Royal Packing Co.*,
22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000).......................................22

*Nielsen v. AECOM Technology Corp.*,
762 F.3d 214, 218 (2d Cir. 2014) ......................................................................8

*Sarrazin v. Coastal Inc.*,
331 Conn. 581, 623 (2014) ...................................................................... 7, 19-20

*Segura v. J.W. Drilling, Inc.*,
355 P.3d 845, 848 (N.M. App. 2015)................................................................22

*Thomas v. Amazon.com Servs., Inc.*,
462 F.Supp.3d 828, 834-35 (N.D. Ohio 2020) ................................................28

*Tennessee Coal, Iron & R Co. v. Muscoda Local No. 123*,
321 U.S. 590 (1944)..........................................................................................15

*Vaccaro v. Amazon.com.dedc, LLC*,
2020 WL 3496973, *3 (D.N.J. June 29, 2020)........................................... 23-25

*Williams v. Gen. Nutrition Ctrs, Inc.*,
326 Conn. 651, 661-62 (2017)................................................................... 18-20

*Thomas v. Amazon.com Servs., Inc.*,
462 F.Supp.3d 828, 834-35 (N.D. Ohio 2020)

## Statutes & Regulations

28 U.S.C. § 1291 ..................................................................................................1

28 U.S.C. § 1332 ..................................................................................................1

28 U.S.C. § 1332(d)(2)..........................................................................................1

28 U.S.C. § 1441 ..................................................................................................1

28 U.S.C. § 1441(a) ..............................................................................................1

28 U.S.C. § 1446 ..................................................................................................1

28 U.S.C. § 1453 ..................................................................................................1

29 U.S.C. § 203(o) ..............................................................................................23

29 U.S.C. § 207(a)(1) ................................................................................... 18

29 U.S.C. § 251 *et. seq*. .......................................................................... *passim*

C.G.S. § 1-2z ............................................................................... 9, 14-16

C.G.S. § 31-58 .............................................................................. 2, 14, 21

C.G.S. § 31-72 ........................................................................ 2, 14, 19, 21

C.G.S. § 31-76b(2)(A) ............................................................................. *passim*

C.G.S. § 31-76c ................................................................................... 18

C.G.S. § 31-76i(f) ................................................................................. 21

C.G.S. § 31-76i(p) ................................................................................ 22

N.H. Rev. Stat. Ann. § 279.21(b) .................................................................. 29

O.R.C. § 4113.03(A) ............................................................................... 28

VA Code Ann. § 40.1-29.2 ........................................................................... 29

29 C.F.R. § 541.601 ............................................................................ 21-22

34 Pa. Code § 231.1 ............................................................................ 25-27

803 Ky. Admin. Regs., 1:065(7) .................................................................... 27

Ariz. Admin. Code R20-5-1202(19) .................................................................. 26

COMAR 09.12.41.10A ................................................................................ 27

Nev. Admin. Code § 608.115(1) ..................................................................... 26

N.J. Admin. Code § 12:56-5.2(a) ................................................................... 26

OAR 839-020-0043(1) ............................................................................ 28-29

Regs., Conn. State Agencies § 31-60-10 ............................................................ 19

Regs., Conn. State Agencies § 31-60-11 ............................................................ 15

Regs., Conn. State Agencies § 31-62-D4 ............................................................ 18

v

**Public Acts**

Connecticut Public Act No. 493, §1 (1967)................................................................7

## I.    **JURISDICTIONAL STATEMENT**

### A.    *Basis for the District Court's Subject Matter Jurisdiction*

The District Court has subject matter jurisdiction of this case pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). Defendants Amazon.com.dedc LLC, Amazon.com, Inc., and Amazon.com Services, LLC (collectively "Amazon" or "Defendants") removed this lawsuit from Connecticut Superior Court pursuant to 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *See* **A1-15**. This Court's subject matter jurisdiction, and the basis for removal, is founded upon 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Specifically, the parties are diverse, there are more than 100 putative class members, and the amount in controversy exceeds $5,000,000. **A1-15**.

### B.    *Basis for the Court of Appeals' Jurisdiction*

This court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal from a final decision of the District Court. **A127**. ("It is therefore; ORDERED, ADJUDGED, and DECREED that Judgment is entered in favor of defendants Amazon.com.dedc LLC, Amazon.com, Inc., and Amazon.com Services, LLC and the case is closed.").

### C. *This Appeal is Timely*

The District Court granted Defendants' Motion for Summary Judgment on September 20, 2023. **A114-126**. The District Court entered Judgment on September 21, 2023. **A127**. Plaintiffs filed their Notice of Appeal on September 27, 2023. **A128**.

### D. *This Appeal is From A Final Order or Judgment That Disposes of All Parties' Claims*

Plaintiffs' appeal is from a judgment that disposes of all of their claims, i.e., the entry of judgment on all issues in favor of Defendants. **A127**. ("It is therefore; ORDERED, ADJUDGED, and DECREED that Judgment is entered in favor of defendants Amazon.com.dedc LLC, Amazon.com, Inc., and Amazon.com Services, LLC and the case is closed.").

## II. <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

Plaintiffs ask the Second Circuit to address the following issue:

*Whether the District Court erred in holding that the Connecticut General Assembly implicitly and silently "intended to incorporate both the FLSA and the [federal Portal to Portal Act, 29 U.S.C. § 251, et. seq.] when enacting its overtime scheme." **A124-126**.*

## III. <u>STATEMENT OF THE CASE</u>

Plaintiffs sued Amazon under Connecticut's Minimum Wage Act ("CMWA"), C.G.S. Sec. 31-58, and the Connecticut Wage Act ("CWA"), C.G.S. Sec. 31-72, for unpaid overtime and straight time wages respectively. **A39-49.**

Amazon moved for summary judgment on Plaintiffs' claims asserting that the federal PTPA applied to their Connecticut wage law claims. **A149**. Judge Kari Dooley granted Amazon's motion and entered judgment. **A114-127.**

### A.     *Facts Relevant to the Issues Submitted for Review*

#### 1.     <u>Amazon's Connecticut Fulfillment Centers</u>

Amazon owns and operates two large Fulfillment Centers in Connecticut – BDL2, located in Windsor, and BDL3, located in North Haven. **A75**. Amazon employed Plaintiff Colin Meunier as a Fulfillment Associate at BDL2 from May 29, 2018 through July 10, 2019. **A76**. Amazon employed Plaintiff Aaron Delaroche as a Fulfillment Associate at BDL2 from November 7, 2019 through April 1, 2021. *Id.* Amazon employs thousands of hourly workers at BDL2.[1] **A106**.

#### 2.     <u>The Security Screening Procedures at BDL2</u>

##### a.     **Amazon's Requirements for Employees Entering the Premises**

Amazon required its employees at BDL2 to enter and exit the premises from a "sole entrance." **A76**. All Amazon employees followed the same procedure to enter the premises at BDL2. *Id*. Amazon issued all hourly workers an ID badge, called a "Lenel badge," which they used to enter the premises. *Id.;* **A106**. Employees entered the premises at BDL2 by walking through the entrance, passing

---

[1] The policies and procedures discussed herein relate only to BDL2, the location where Plaintiffs Meunier and Delaroche worked.

their Lenel badges over a card reader, and then proceeding through the turnstiles. *Id.*; **A106**. Employees then walked several minutes within BDL2 to arrive at their workstations. **A106**. Amazon placed time clocks throughout BDL2 for employees to clock in and out, including a set of time clocks near the security area. **A107**.

### b.   Amazon's Mandatory Security Procedures at the End of Plaintiffs' Shifts

Amazon "required" all hourly workers "to be on the premises" to undergo mandatory security screenings after clocking out but before Amazon permitted them to leave. *Id.*; **A106**. Amazon required its workers to clock out at a time clock and then walk to the security screening area. **A106-107**. Amazon arranged the layout of the warehouse such that employees had no choice but to clock out before going through security. **A107**. Amazon required its employees to undergo security screenings before leaving the premises to ensure that employees were not stealing merchandise. *Id.* Amazon employees could be fired if they attempted to bypass primary or secondary security screenings. *Id*.

While in the security area, Amazon employees were required to stand in line to pass through the metal detectors. *Id.* Next, the hourly workers at BDL2 were required to proceed through "Primary Screening" at the security screening area, and if necessary, a "Secondary Screening." *Id.* At the "Primary Screening," employees were sorted into one of several "lanes" including the  "express lane," "divestment lane," or "x-ray lane." The lane that employees were sorted into

depended on what items they were carrying at the time. *Id.*; **A77-78**. Employees were permitted to walk through the metal detectors at the "Express Lane" if they carried nothing with them that would set off the metal detector. **A77**. If an employee carried items that would likely set off the metal detector, they were sorted into the "Divestment Lane." **A107**. If an employee carried a bag, lunch bag, or purse on them, they were required to use the "x-ray" lane. **A78**. If an employee triggered the metal detector while passing through, Amazon required the worker to undergo a "Secondary Screening" where a security guard "wanded" them for metal. *Id*.

Amazon admits that their hourly workers at BDL2 were "on the premises" for the entire security screening. **A107**. Once through security, Amazon permitted its employees to proceed through the turnstiles and out of the building. **A108**.

### B. *Relevant Procedural History*

Plaintiffs filed this action in Connecticut Superior Court on August 2, 2021. Amazon removed this case to federal court pursuant to CAFA on August 27, 2021. **A1-15**. Plaintiffs amended their Complaint on September 20, 2021. **A39**. Defendants filed their Answer on October 14, 2022. **A50**. Defendants moved for Summary Judgment on December 6, 2022. **A149**. Plaintiffs filed their Opposition on January 6, 2023 and Defendants replied on January 27, 2023. *Id.* The District Court entered its Order granting Defendants' Motion for Summary Judgment on

September 20, 2023. *Id*.; **A124-126.**

The District Court held that the Connecticut General Assembly implicitly and silently "intended to incorporate both the FLSA and the PTPA [Portal to Portal Act] when enacting its overtime scheme." **A124-126**. The Court wrote:

> [W]hile it is true that the Connecticut legislature did not expressly incorporate the PTPA into Connecticut's wage law, and while silence on the issue *can* indicate an intent on the part of the legislature to exclude or otherwise decline to incorporate federal law, here, the Connecticut Supreme Court has directed that when Connecticut wage laws are silent on a particular issue, courts should consider federal statutes and precedent on that issue. Further, Connecticut enacted its wage laws long after Congress had enacted both the FLSA and the PTPA, and the legislature did so to bring Connecticut's laws into alignment with federal overtime laws. Thus, insofar as the PTPA was a federal overtime law when the Connecticut legislature enacted Connecticut's wage laws, the Court concludes that the Connecticut legislature intended to incorporate both the FLSA and the PTPA when enacting its overtime scheme. And there is simply no extratextual indication that the legislature intended to exclude the PTPA.

**A124** (emphasis in the original; internal citations omitted).

The District Court further held that the time Amazon required Plaintiffs to be on the premises after their shifts to undergo security screenings is not compensable under Connecticut law "because it is not 'indispensable to the performance of their productive work and integrally related thereto' their duties 'of retrieving products from warehouse shelves or packing them for shipment.'" **A125-126** (quoting *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 34-35 (2014)).

**C.**  *Ruling Presented for Review*

Plaintiffs present the ruling of the District Court granting Defendants' Motion for Summary Judgment for review. **A114-126**.

**IV.**  <u>SUMMARY OF THE ARGUMENT</u>

In Connecticut, employers must pay their employees for all hours worked. *Sarrazin v. Coastal Inc.*, 331 Conn. 581, 623 (2014) (McDonald, J; concurring) ("Under the wage laws, an employee is paid "wages" for "hours worked."). "Hours worked" "include all time during which an employee is required by the employer to be on the employer's premise[.]" C.G.S. § 31-76b(2)(A). The time an employee "necessarily spen[d]s" walking on the employer's premises is "work" time. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691-92 (1946) (holding that the time pottery workers "necessarily spent" walking across the defendant's 8-acre facility was compensable under the FLSA). Congress responded to *Mt. Clemens* by enacting the federal Portal to Portal Act in 1947 (PTPA) to excuse employers from paying for pre- and post-liminary tasks and walking time. Connecticut never enacted its own PTPA. Instead, it codified *Mt. Clemens* in 1967, twenty years after Congress passed the PTPA. Public Act No. 493, §1 (1967).

The District Court held that Connecticut's General Assembly "intended" to adopt the PTPA while conceding that it never expressly did so. The General Assembly passes laws by voting on bills in open session, not silently or implicitly.

Two other states' supreme courts have rejected a similar argument that their legislatures "silently" enacted a PTPA. *In re: Amazon.com, Inc.*, 255 A.3d 191, 202 (Pa. 2021) ("[W]e will not judicially engraft such provisions thereon."); *Amaya v. DGS Construction, LLC*, 479 Md. 515 (2022) ("[T]he plain language of the MWHL, the MWPCL, and COMAR demonstrate that the PTPA has not been adopted or incorporated as part of Maryland law"). The District Court erred in concluding that the Connecticut General Assembly "intended" to adopt the PTPA when it gave no indication of any such intent.

## V.     **ARGUMENT**

### A.     *Applicable Standard of Review*

The "review of a district court's interpretation of a statute, a pure question of law, is [] *de novo*." *Nielsen v. AECOM Technology Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (reviewing district court's dismissal of an action under Rule 12(b)(2)).

### B.     *Appellants' Contentions and the Reasons for Them*

Plaintiffs contend that:

*The District Court erred in holding that the Connecticut General Assembly implicitly and silently "intended to incorporate both the FLSA and the [federal Portal to Portal Act, 29 U.S.C. § 251, et. seq.] when enacting its overtime scheme."* **A124-126**.

Amazon argued and the District Court agreed that "time spent in security lines is not compensable under Connecticut wage laws…" **A119**. The District Court rejected Plaintiffs' argument that the court should simply apply

Connecticut's statutory definition of "hours worked" which requires employers to pay employees for all time they are "required by the employer to be on the employer's premises." C.G.S. § 31-76b(2)(A). Instead, the District Court wrote that "the relevant definition at issue is not "hours worked" but, rather, "work." **A123**. The District Court reasoned that even though the "Connecticut legislature did not expressly incorporate the PTPA into Connecticut's wage law, and while silence on the issue *can* indicate an intent on the part of the legislature to exclude or otherwise decline to incorporate federal law, … the Connecticut legislature intended to incorporate both the FLSA and the PTPA when enacting its overtime scheme." **A124** (emphasis in the original). In so doing, the District Court committed three errors.

First, the District Court failed to apply the clear statutory definition of "hours worked" supplied by the Connecticut General Assembly. It erroneously construed C.G.S. § 31-76b(2)(A) to require an employee to show, that ***in addition*** to being "required by the employer to be on the premises of the employer," they were also performing "work" for their time to be compensable. Second, the District Court failed to apply the "plain meaning" of C.G.S. § 31-76b(2)(A) as required by C.G.S. § 1-2z to Plaintiffs' claims. Third, the District Court concluded that Connecticut's General Assembly silently and implicitly adopted the federal PTPA without any statutory or regulatory language indicating such an intention. Each

9

error was harmful and requires reversal of the District Court's decision.

1. *The District Court Erroneously Concluded that "the Relevant Definition at Issue is not 'Hours Worked' but Rather 'Work.'"*

The District Court wrote that the "relevant definition [in C.G.S. § 31-76b(2)(A)] is not 'hours worked' but, rather 'work.'" **A123**. Plaintiffs, in their Complaint, alleged that the proper inquiry was "hours worked." **A39**. Section 31-76b(2)(A) of the Connecticut General Statutes provides the definition of "hours worked:

> "Hours worked" include all time during which an employee is required by the employer to be on the employer's premises ***or*** to be on duty, ***or*** to be at the prescribed work place, ***and*** all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer.
>
> (emphasis added).

Thus, the General Assembly provided four different (4) circumstances under which an employer's requirements or an employee's conduct results in "hours worked":

**1)** all time during which an employee is required by the employer to be on the employer's premises;

**2)** all time during which an employee is required by the employer … to be on duty;

**3)** all time during which an employee is required by the employer … to be at the prescribed work place;

**4)** *and* all time during which an employee is employed or permitted to work, whether or not required to do so[.]

The district court construed C.G.S. § 31-76b(2)(A) to require an employee to show that he was, at all times, performing compensable work in order to recover back wages. The court relied on *Belgada v. Hy's Livery Serv. Inc.* for the proposition that "the purpose of 'hours worked' cannot be effectuated without first defining what constitutes 'work.'" **A123** (citing 220 Conn. App. 102, 120 (2023)). The district court erred.

Under C.G.S. § 31-76b(2)(A), "hours worked" occur when an employee is "required by the employer to be on the employer's premises." This provision does not require the employee to be performing any "work" at all. The District Court's interpretation renders the statutory language "required by the employer to be on the employer's premises" superfluous.

Recently, both the Maryland and Pennsylvania Supreme Court rejected arguments that an employee had to prove they were performing "work" to recover back wages under the "hours worked" definitions of those states. In *Amaya*, the Maryland Supreme Court wrote:

Under the plain language of COMAR 09.12.41.10A, the term "hours of work" means the time during a workweek that an employee is required by an employer to be "on the employer's premises, on duty, or at a prescribed workplace." This language provides three circumstances under which an employer's requirement results in hours of work for an employee—namely, an employee being required to be (1) on the

11

employer's premises, (2) on duty, or (3) at a prescribed workplace. Thus, an employee could engage in hours of work as a result of being required to be on duty at a location other than a prescribed workplace and by being required to be on the employer's premises, which may or may not be a prescribed workplace. ***Given this, it would be inconsistent with the plain language of the COMAR provision to require that an employee be engaged in the performance of actual physical labor or the performance of the principal work activities of employment in order to be compensated for hours of work***. Under COMAR 09.12.41.10A, it is sufficient that the employer require the employee to be on duty, on the premises, or at a prescribed workplace.

479 Md. at 571–72 (emphasis added).

In *In re Amazon.com, Inc.*, the Pennsylvania Supreme Court wrote:

[W]e reject Amazon's broad contention that only time in which employees are required to be on their premises "working" – *i.e.*, engaged in duties or tasks directly related to the specific requirements of their job or occupation – can constitute "hours worked" for purposes of the PMWA. Section 231.1 establishes that this suggested interpretation is unfounded and unreasonably constrained, as this regulation specifically designates *all* "time during which an employee is required by the employer to be on the premises of the employer" as compensable hours worked, regardless of whether the employee is actually performing job-related duties while on the premises.

255 A.3d at 204.

The holding in *Belgada* is not contrary to this reading because *Belgada* involved the interpretation of a different clause in C.G.S. § 31-76b(2)(A). In *Belgada*, limousine drivers alleged that their meal breaks were compensable because their employer required them to take the breaks at a prescribed location, i.e., within two miles of their next pick up. 220 Conn. App. at 132-33. The *Belgada* Court was required to construe the term "work" as it was used in the meal break

clause. C.G.S. § 31-76b(2)(A) ("time allowed for meals shall be excluded [from hours worked] ***unless*** the employee ***is required*** or permitted ***to work***.") (emphasis added). The Connecticut Appellate Court held that the drivers' meal breaks were not compensable because they could spend that time predominately for their own benefit, not that of the employer. *Id.* at 133-34. Importantly, the *Belgada* Court did not interpret the clause at issue here – the clause defining "hours worked" – to include "all time an employee is required by the employer to be on the employer's premises."

In rejecting Plaintiffs' claims, the District Court relied heavily on the United States Supreme Court's opinion in *Integrity Staffing Sols., Inc. v. Busk*. **A119-120**; **A123**. In *Integrity Staffing*, the Supreme Court held that Amazon workers' post-shift security screenings were not compensable under the FLSA because of the PTPA. It held that those activities were not "integral and indispensable" to the plaintiffs' duties as warehouse workers under the FLSA. 574 U.S. at 35. *Integrity Staffing* has no bearing on this case, because Plaintiffs bring their claims here under the Connecticut Wage Act, not the FLSA. *See In re:Amazon.com, Inc.*, 255 A.3d at 201 ("[I]n addressing the question before us – whether the time these employees were required to spend on Amazon's premises as a result of the security screening process constituted "hours worked" – we are not bound by the United States Supreme Court's decision in [*Integrity Saffing*], which addressed the FLSA,

and its PTPA amendments.").

The District Court erred in applying the FLSA's "integral and indispensable test" because Plaintiffs sued under the CMWA and CWA, which utilize a different test – whether Amazon required them to be on its premises. If the District Court had applied that test, it would have concluded that Plaintiffs' post-shift security screenings are compensable as hours worked because Amazon admittedly required Plaintiffs to be on its premises during that time. *See id.* at 204 (holding that the time Amazon workers were required to spend waiting for, and undergoing security screenings was compensable under Pennsylvania law).[2]

In sum, the District Court should have interpreted the "hours worked" provision under Connecticut law as pleaded by Plaintiffs. It should not have imposed the federal PTPA "integral and indispensable" test to their claims. If the District Court had interpreted "hours worked" according to its plain meaning as required by Connecticut law, it would have denied Defendants' motion. Accordingly, the District Court erred.

2. *The District Court Failed to Follow the "Plain Meaning" Rule of C.G.S. 1-2z*

Had the District Court applied the plain meaning of "hours worked" under Connecticut law, it would have held that Defendants' requirement that Plaintiffs

---

[2] Plaintiffs discuss this case in more depth *infra*.

"be on the premises" after their shifts to complete security screenings constituted compensable work under Connecticut law.

In Connecticut, "[t]he meaning of a statute shall, in the first instance, be ascertained from *the text of the statute itself* and its relationship to other statutes." C.G.S. § 1-2z (emphasis added). "If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." *Id*. Under § 1-2z, if the language of a statute is clear after considering its relationship to other statutes, then the court does not consider "extratextual evidence," such as legislative history. The District Court erred because it did not apply the plain language test to C.G.S. § 31-76b(2)(A).

The text of C.G.S. § 31-76b(2)(A) and Regs., Conn. State Agencies § 31-60-11 is plain and unambiguous. When Connecticut's General Assembly enacted C.G.S. § 31-76b(2)(A), it adopted the definition of the statutory workweek from *Mt. Clemens* almost word for word. 328 U.S. at 690-91 ("[T]he statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises…"). The United States Supreme Court's decisions in *Tennessee Coal, Iron & R Co. v. Muscoda Local No. 123,* 321 U.S. 590 (1944) and *Mt. Clemens* led Congress to enact the PTPA. *Integrity Staffing*, 574 U.S. at 31-32.

Amazon never argued, and the District Court did not hold, that these words

have an alternate meaning. **A123** (acknowledging that "the language of Sec. 31-76b(2)(A) certainly tracks the language of *Mt. Clemens*[.]"). Amazon does not contest that it required Plaintiffs to be on the premises from the moment they clocked out through completion of the mandatory post-shift security screenings.

Because Amazon had no persuasive arguments that Plaintiffs were not entitled to unpaid wages under state law, it argued that the federal PTPA excused Amazon from paying its workers for "all time" that it required them to be on the premises. Furthermore, because there is no such thing as the "Connecticut Portal-to-Portal" Act, it argued that the Connecticut General Assembly silently adopted one. When Connecticut's General Assembly took upon the task of defining "hours worked," it was not silent. It codified *Mt. Clemens* despite the existence of the PTPA. In adopting Amazon's argument, the District Court erred.

3.  *The District Court Erroneously Inferred that the General Assembly "intended" to Silently and Implicitly Engraft the Rules of the Federal PTPA into Connecticut's Wage Laws*

The District Court held that Connecticut's General Assembly "intended to incorporate both the FLSA and PTPA when enacting its overtime scheme. And there is simply no extratextual indication that the legislature intended to exclude the PTPA." **A124**. The court wrote in full:

> [W]hile it is true that the Connecticut legislature did not expressly incorporate the PTPA into Connecticut's wage law, and while silence on the issue *can* indicate an intent on the part of the legislature to exclude or otherwise decline to incorporate federal law, here, the

16

Connecticut Supreme Court has directed that when Connecticut wage laws are silent on a particular issue, courts should consider federal statutes and precedent on that issue. Further, Connecticut enacted its wage laws long after Congress had enacted both the FLSA and the PTPA, and the legislature did so to bring Connecticut's laws into alignment with federal overtime laws. Thus, insofar as the PTPA was a federal overtime law when the Connecticut legislature enacted Connecticut's wage laws, the Court concludes that the Connecticut legislature intended to incorporate both the FLSA and the PTPA when enacting its overtime scheme. And there is simply no extratextual indication that the legislature intended to exclude the PTPA.

*Id.* (emphasis in the original).

The District Court concluded that even though Connecticut's general assembly "did not expressly incorporate the PTPA into Connecticut's wage law," that the PTPA applied for two reasons. First, because Connecticut's Supreme Court has directed courts to construe similar provisions of federal and Connecticut wage law consistently. Second, the District Court held that the federal PTPA applied because there is no "extratextual indication that the legislature intended to exclude the PTPA." The District Court was mistaken.

> a. **Connecticut Courts Do Not Interpret Connecticut Wage Laws Co-extensively with Federal Wage Laws When the Language of Connecticut Law Differs From Federal Law**

The District Court wrote that "the Connecticut Supreme Court has directed that when Connecticut wage laws are silent on a particular issue, courts should consider federal statutes and precedent on that issue." **A124**. The District Court applied this general proposition of Connecticut law too broadly.

Connecticut courts do not rely on federal wage law to interpret Connecticut's wage laws when their terms conflict. *E.g. Williams v. Gen. Nutrition Ctrs, Inc.*, 326 Conn. 651, 661-62 (2017). Connecticut courts do not construe Connecticut's wage laws consistently with federal wage laws at all costs. *Id.*

In *Williams*, the Connecticut Supreme Court held that employers who pay mercantile employees on a commission basis ***cannot*** use the federal fluctuating work week ("FWW") method to calculate their overtime. *Id.*[3] The *Williams* Court wrote that Connecticut's wage laws did not generally prohibit employers from using the federal FWW method because "§ 31-76c, which sets forth the overtime requirement, ***is nearly identical*** to the federal overtime statute 29 U.S.C. § 207(a)(1)[.]" *Id.* at 659 (emphasis added).[4] The Court did not end its analysis there.

The Court turned to whether the regulations interpreting the Connecticut Wage Act, specifically, Conn. Regs. § 31-62-D4, which governs mercantile employees, permitted GNC to use the FWW to calculate the plaintiffs' overtime. *Id.* at 660-62. The court held that GNC could not use the FWW because § 31-62-D4 required GNC to calculate its employees' overtime based on the number of

---

[3] The federal FWW allows employers to calculate overtime based on the number of hours actually worked in a given work week. For example, if an employee is paid a weekly salary of $500.00 and works 50 hours in a week, his "regular rate" for the week is $10.00 (500/50), and that employee is paid $15.00 for the hours over 40 for that week. If that same worker works 60 hours in the next week, his regular rate is $8.33 (500/60), and he is paid $12.50/hr. ($8.33 x 1.5) for the hours over 40.

[4] The District Court cited *Williams* in its opinion for this proposition, but not discuss the holding of *Williams* or the Connecticut Supreme Court's reasoning.

18

hours in the "usual work week," not how many hours that employee actually

worked on a week-to-week basis:

> By setting forth **its own formula** for mercantile employers to use when computing overtime pay, one that requires them to divide pay by the usual hours worked to calculate the regular hourly rate, **the wage order leaves no room for an alternative calculation method.** … The wage order thus precludes the use of the fluctuating method's divide by actual hours approach, at least for employees covered by the wage order.

*Id.* at 661-62 (emphasis added).

In *Sarrazin v. Coastal Inc.*, a plumber sued under the CWA alleging that his

commute was compensable because he drove a company vehicle with company

tools that he delivered to work sites. 311 Conn. at 586. The Court analyzed whether

the PTPA preempted § 31-60-10. *Id.* at 592-607. It concluded that the PTPA

preempted § 31-60-10 because it provided no compensation for an employee's

regular commute, while the FLSA did in certain circumstances. *Id.* at 607.

The court emphasized that the PTPA did not preempt Connecticut law

generally or in all circumstances, and that its holding was "necessarily limited to

the facts of the present case." *Id.* at 607 n. 18. The Court explained that the FLSA

only preempts Connecticut wage laws that are less beneficial to workers than the

FLSA. *Id.* ("Our decision should not be read to conclude that the FLSA preempts §

31–60–10(b) of the regulations in every instance. There may be factual

circumstances under which § 31–60–10(b) provides for greater benefits to

employees than that allowed under the FLSA.").

As *Sarrazin* and *Williams* demonstrate, while the Connecticut Supreme Court usually interprets "nearly identical" terms in Connecticut wage laws consistently with the FLSA, it has refused to do so when Connecticut law differs in its terms with federal law – particularly when the outcome is worse for Connecticut workers. The S*arrazin* Court applied the PTPA to the facts of that case because in that instance the PTPA was more employee-friendly. If the PTPA applied to Connecticut law by force of its existence, the *Sarrazin* Court would have simply applied the PTPA. It would not have needed to engage in the preemption analysis.

Section 31-76b(2)(A) irreconcilably conflicts with the PTPA because it requires employers to count as "hours worked," "all time during which an employee is required by the employer to be on the employer's premises." The PTPA expressly limits what tasks are compensable, and thus, ***what work time is compensable***. Accordingly, the Connecticut Supreme Court would enforce C.G.S. Sec. 31-76b(2)(A) according to its own terms and hold that the PTPA does not apply to Connecticut's wage laws.

### b. The General Assembly Excluded the PTPA When Enacting Connecticut's Wage Laws

The District Court wrote "while silence on an issue *can* indicate an intent on the part of the legislature to exclude or otherwise decline to incorporate federal law, … there is simply no extratextual indication that the legislature intended to exclude the PTPA." **A124** (emphasis in the original). Holding that the absence of

20

an expressed intent to exclude the PTPA means that the Connecticut General Assembly adopted it, is clear error.

State legislatures are not "assume[d]" to have adopted the provisions of the PTPA into their state's wage laws "[a]bsent any affirmative indication" they intended to do so. *In re: Amazon.com, Inc. Fulfillment Ctr. Fair Labor Standards Act (FLSA) Wage and Hour Litigation*, 905 F. 3d 387, 402 (6th Cir. 2018) (*Busk II*) ("Absent any affirmative indication that the Nevada legislature intended to adopt the Portal-to-Portal Act, there is no reason to assume that it did."). There is no indication that the General Assembly intended to incorporate the PTPA.

When the General Assembly intends to incorporate federal law into the CMWA or CWA, it does so expressly, "indicat[ing] that its failure to adopt [the PTPA] [is] intentional." *Id.* at 403. *E.g.,* C.G.S. § 31-58(e) (defining the term "employee" to include "any individual in domestic service employment as defined in the regulations of the federal Fair Labor Standards Act … or an outside salesman as defined in the regulations of the federal Fair Labor Standards Act[.]"); C.G.S. § 31-76b(2)(D) (modifying the definition of hours worked for individuals employed by third-party companionship providers consistently with the regulations of the Fair Labor Standards Act.[.] "); C.G.S. § 31-76i(f) ("The provisions of sections 31-76b … shall not apply to … any person employed in the capacity of outside salesman as defined in the regulations of the Federal Fair Labor Standards

Act."); C.G.S. § 31-76i(p) (mortgage originators are exempt from overtime if they qualify as a "highly compensated employee" as defined in 29 C.F.R. § 541.601…").

The General Assembly has amended Connecticut's wage laws numerous times, but not once has it added PTPA language to our state's laws. *See Amaya*, 479 Md. at 559 ("Since their enactment in 1965 and 1966, respectively, the MWHL and the MWPCL have been amended over the decades, and at no point has the General Assembly amended the statutes to include the PTPA or to add in any of the excluded activities set forth in the PTPA.").

Where a state's wages statutes and regulations are silent as to whether the PTPA applies, most courts have refused to judicially engraft the PTPA's provisions into those wage laws. *Id*. at 555 ("[W]e hold that, in Maryland, the PTPA … has not been adopted or incorporated into the MWHL, MWPCL, or in COMAR."); *Segura v. J.W. Drilling, Inc.*, 355 P.3d 845, 848 (N.M. App. 2015) (the district court erred by relying on cases interpreting the PTPA to decide a case under New Mexico law); *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) (refusing to hold that the PTPA applied to California's wage laws "by implication"); *Anderson v. State, Dep't of Soc. & Health Servs.*, 63 P.3d 134, 136 (Wash. App. 2003) ("We are not persuaded that the Legislature intended to adopt the Portal to Portal Act; and we do not hold that it was adopted."); *Busk II*,

22

905 F. 3d at 395-405 ("[T]here is nothing to suggest that the Arizona legislature intended to adopt the federal Portal-to-Portal Act into its Code. As with Nevada, we refuse to read in such a significant statute by inference or implication."); *Vaccaro v. Amazon.com.dedc, LLC*, 2020 WL 3496973, *3 (D.N.J. June 29, 2020) (slip. op.) (concluding that that the New Jersey Legislature did not incorporate the PTPA's exclusions because several provision of New Jersey's wage laws and regulations "direct[ly] conflict[ed] with the [PTPA]."); *see also Gerber Prod. Co. v. Hewitt*, 492 S.W.3d 856, 863-64 (Ark. 2016) (declining to judicially engraft 29 U.S.C. § 203(o) into Arkansas' wage laws).

In three cases involving Amazon warehouse workers, courts interpreting the definition of "hours worked" under state laws have refused to engraft the PTPA's provisions to those state's wage laws in the absence of evidence the legislature intended the PTPA to apply.

In *Busk II*, the Sixth Circuit held that the time Amazon required its employees to spend undergoing mandatory security screenings was compensable as "hours work" for purposes of Nev. Admin. Code § 608.115(1) and Ariz. Admin. Code R20-5-1202(19). 905 F.3d at 398-402. The Sixth Circuit rejected Amazon's argument that Nevada and Arizona incorporated the PTPA into state wage laws by implication. 905 F.3d at 402-404. The Court did so because Nevada's wage laws requiring employers to pay for each hour worked directly conflicted with the

PTPA, and its Legislature adopted some federal regulations, but not the PTPA. *Id.* at 403 ("[T]he Nevada legislature expressly included references to federal regulations in multiple parts of NRS Chapter 608. …That the Nevada legislature expressly adopted some federal regulations ***indicates that its failure to adopt others was intentional***."; emphasis added). The Court then held that Arizona did not incorporate the PTPA into its wage laws because its definition of "hours worked" is broader than the PTPA:

> Arizona law also seems inconsistent with the Portal-to-Portal Act. For instance, the Industrial Commission has promulgated regulations that state that "no less than the minimum wage shall be paid for *all hours worked*[.] … And as explained above, "hours worked" is defined under Arizona law as "all hours for which an employee covered under the Act is employed and required to give the employer, including *all time during which an employee is on duty or at a prescribed work pace and all time the employee is suffered or permitted to work*." Ariz. Admin. Code R.20-5-1202(9).

*Id.* at 404-05 (emphases in the original).

In *Vaccaro v. Amazon.com.dedc, LLC*, the District of New Jersey denied Amazon's motion for judgment on the pleadings, asserting that preliminary and postliminary tasks were not compensable under New Jersey law. 2020 WL 3496973 at *3 . The Court concluded that Amazon's mandatory security screenings were "work" under N.J.A.C. 12:56-5.2(a). *Id.* at *3-4. The Court then rejected Amazon's argument that the PTPA applied to the plaintiff's claims because New Jersey's wage statutes and regulations "expressly refer to provisions of the FLSA

24

and its regulations, yet the NJWHL and its regulations ***do not cite*** to the section of the FLSA that was amended by the Portal-to-Portal Act, *i.e.,* Section 7." *Id.* (internal citations omitted; emphasis added).

In *In re: Amazon.com, Inc.*, the Pennsylvania Supreme Court reversed summary judgment granted in Amazon's favor, holding that the time its employees spent waiting to undergo and undergoing mandatory security screenings was compensable as hours worked. *In re: Amazon.com, Inc.*, 255 A.3d at 204. The Pennsylvania Minimum Wage Act (PMWA) defined "hours worked" as follows:

> ***Hours worked—The term includes time during which an employee is required by the employer to be on the premises of the employer***, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

*Id*. at 203 (*quoting* 34 Pa. Code § 231.1; emphasis added).

Amazon argued that Pennsylvania had implicitly adopted the PTPA, rendering the security screenings not compensable under the PMWA, citing *Integrity Staffing*. Amazon asked the court to "heed the sentiment of Congress when it enacted the federal PTPA in response to what it perceived as the erroneous judicial interpretation of the FLSA, arguing that, by the time the legislature enacted the PMWA in 1968, the concepts embodied in the PTPA were already firmly

embedded in federal wage and hour law." *Id.* at 200. Amazon asked the Court to

"define 'workweek' consistent[ly] with [*Integrity Staffing*] and exclude employees'

time spent undergoing the security screenings." *Id*. The court rejected Amazon's

invitation because "the FLSA, by its own terms, specifically permits states "to

enact more beneficial wage and hour laws" than provided by the FLSA." It ruled

that "the PMWA must be interpreted in accordance with its own specific terms[.]"

*Id*. at 202. Finally, the court wrote:

> "Consequently, respecting the Pennsylvania legislature's evidence policy choice not to make the PTPA's statutory exclusion of certain employee activities from compensable time a part of the PMWA, we will not judicially engraft such provisions thereon."

*Id*.

Connecticut's definition of "hours worked" is similar to those of Arizona,

Nevada, New Jersey, Pennsylvania, and Maryland, which all conflict with the

PTPA. *Compare* C.G.S. § 31-76b(2)(A) *with* Nev. Admin. Code § 608.115(1)

("hours worked" includes "all time worked by the employee at the direction of the

employer[.]"); Ariz. Admin. Code R20-5-1202(19) ('Hours worked' means all

hours for which an employee covered under the Act is employed and required to

give to the employer, including all time during which an employee is on duty or at

a prescribed work place and all time the employee is suffered or permitted to

work."); N.J. Admin. Code § 12:56-5.2(a) ("hours worked" defined as "[a]ll time

the employee is required to be at his or her place of work …"); 34 Pa. Code §

231.1 ("The term [hours worked] includes ***time during which an employee is***

***required by the employer to be on the premises of the employer***, to be on duty or

to be at the prescribed work place."; emphasis added). COMAR 09.12.41.10A

("'Hours of work' means the time during a workweek that an individual employed

by an employer is ***required by the employer to be on the employer's premises***…"'

emphasis added).

In contrast, courts construing the wage laws of Kentucky, Ohio, and Oregon

have ruled that the PTPA applied to the laws of those states. But in each of those

cases, the state law at issue expressly included the PTPA or its language (e.g.,

preliminary, postliminary, principal activity).

First, the Sixth Circuit decided *In re Amazon.com, Inc. Fulfillment Ctr. Fair*

*Labor Standards Act (FLSA) Wage and Hour Litig.*, holding that Kentucky's wage

laws incorporated the provisions of the PTPA. 852 F.3d 601, 605 (6th Cir. 2017).

The Court reached its result because Kentucky's labor regulations included PTPA

language. *Id.* at 613-614. For example, the "travel time" regulation uses the term

"principal activity," which is taken from the text of the PTPA, "strengthen[ing] the

Portal-to-Portal connection." *Id.* at 613 (*quoting* 803 Ky. Admin. Regs., 1:065(7)).

The Sixth Circuit, ***if presented with this case***, would hold that Connecticut's

General Assembly did not incorporate the PTPA because C.G.S. § 31-76b(2)(A)

defines hours worked "broadly" and "directly conflicts" with the PTPA. *Busk II*, 905 F.3d at 402-05.

In *Hughes v. UPS Supply Chain Sols., Inc.*, the Supreme Court of Kentucky held that the PTPA applied to Kentucky's wage laws. 2023 WL 5444612, *3-6, -- S.W.3d --- (Ky. Aug. 24, 2023). The Court relied on the inclusion of PTPA exemptions into Kentucky's wage regulations by the state's department of labor, and the legislature's "acquiesce[ence]" in response in its holding. *Id.* at *3-4, 6.

In *Thomas v. Amazon.com Servs., Inc.*, a court in the Northern District of Ohio granted Amazon's motion for judgment on the pleadings, holding that the Ohio Minimum Fair Wage Standard Act expressly incorporated the PTPA into its provisions. 462 F.Supp.3d 828, 834-35 (N.D. Ohio 2020). The court based its conclusion on the clear statutory language:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, *in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended*.

*Id*. (quoting O.R.C. § 4113.03(A); emphasis in the original).

In *Buero v. Amazon.com Services, Inc.*, the Ninth Circuit held that Oregon's wage laws "parallel[ed] the FLSA as modified by the Portal-to-Portal Act[.]" 61 F.4th 1031, 1041 (9th Cir. 2023). The Court reached this result because "[t]he text of Rule 43 [OAR 839-020-0043] mirrors the Portal-to-Portal Act and subsequent

case law." Rule 43 states: "Preparatory and concluding activities are considered hours worked if the activities performed by the employee are an integral and indispensable part of a principal activity." *Id.* (quoting OAR 839-020-0043(1)).

Courts should not assume that a state's legislature intended that the PTPA apply to its wages law in the absence of some affirmative indication that it so intended. State legislatures are capable of enacting their own PTPA. When a state's legislature intends to incorporate the terms of the PTPA into a state's wage laws, it does so expressly. Typically, those states refer to ***both*** the FLSA and PTPA. *See e.g.,* N.H. Rev. Stat. Ann. § 279.21(b) ("Any employee of employers covered under the provisions of the federal Fair Labor Standards Act of 1938, ***as amended*** (29 U.S.C. section 201, et seq.; emphasis added); VA Code Ann. § 40.1-29.2 ("Any employer that violates the overtime pay requirements of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., ***as amended***…"; emphasis added).

Nothing in Connecticut's statutes or regulations expresses any intention to incorporate the PTPA into Connecticut law. Accordingly, Connecticut's General Assembly intended to exclude the PTPA from its Wage Act, and this court should conclude the same.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should hold that Connecticut's General Assembly did not enact or adopt the federal PTPA by expressly or by implication

when it passed C.G.S. § 31-76b(2)(A). Accordingly, this Court should reverse the decision of the District Court and remand for further proceedings consistent with its Opinion.

DATED:    December 15, 2023    Respectfully submitted,

By:   */s/ Richard E. Hayber*
        Richard E. Hayber (ct11629)
        Hayber, McKenna & Dinsmore, LLC
        750 Main Street, Suite 904
        Hartford, CT 06103
        Tel.:  (860) 522-8888
        Fax:  (860) 218-9555
        rhayber@hayberlawfirm.com
        Attorney for the Plaintiffs

**CERTIFICATION OF SERVICE**

I, Richard E. Hayber, hereby certify that on December 15, 2023, I caused the Appellants' Opening Brief and Joint Appendix to be electronically filed with the Clerk of the Court of Appeals for the Second Circuit using the CM/ECF system and to be served on all counsel of record.

*/s/ Richard E. Hayber*
Richard E. Hayber

# CERTIFICATION OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements,
and Type-Style Requirements

The undersigned certifies as follows:

1.      This document complies with the word limit requirement of Federal Rule of Appellate Procedure 32(a)(7)(A). This document also complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Local Rule 32.1(a)(4) because it contains 7301 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface of 14 points.

*/s/ Richard E. Hayber*
Richard E. Hayber

Dated:  December 15, 2023

32