No. 23-1337

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

JAVIER DEL RIO, COLIN MEUNIER, AND AARON DELAROCHE, ON BEHALF OF
THEMSELVES AND OTHER SIMILARLY SITUATED EMPLOYEES,

*Plaintiffs-Appellants,*

v.

AMAZON.COM.DEDC, LLC, AMAZON.COM, INC., AND AMAZON.COM SERVICES, LLC,

*Defendants-Appellees,*

AMAZON.COM SERVICES, INC.,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
CASE NO. 3:21-CV-01152-KAD
THE HONORABLE KARI A. DOOLEY

_____

**OPPOSITION OF DEFENDANTS-APPELLEES TO PLAINTIFFS-
APPELLANTS' MOTION TO CERTIFY QUESTIONS OF LAW TO THE
CONNECTICUT SUPREME COURT**

**SEYFARTH SHAW LLP**
Daniel B. Klein
Alison H. Silveira
Michael E. Steinberg
Samantha L. Brooks

*Attorneys for Defendants-Appellees*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .........................................................................1

II.   LEGAL AND PROCEDURAL BACKGROUND .......................................2

III.  ARGUMENT..............................................................................6

    A.    Certification Is Unwarranted Because the Issues May Be
        Resolved Through Application Of State Appellate Authority
        And Legislative History .................................................8

    B.    Plaintiffs' Motion Is An Untimely And Transparent Attempt At
        Forum Shopping ..................................................12

    C.    This Court Does Not Reflexively Certify Questions Of State
        Wage And Hour Law, And Plaintiffs Identify No Unique Policy
        Reasons Warranting A Departure From Ordinary Appellate
        Review ....................................................14

    D.    Even If Certification Were Proper, Plaintiffs' Proposed
        Question Is Not...............................................15

IV.   CONCLUSION.............................................................16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Belgada v. Hy's Livery Serv., Inc.*,
220 Conn. App. 102, 297 A.3d 199 (2023) .................................................*passim*

*Cantwell v. Univ. of Mass.*,
551 F.2d 879 (1st Cir. 1977)...............................................................13

*Cerame v. Lamont*,
346 Conn. 422, 291 A.3d 601 (2023) ...............................................12

*Chao v. Gotham Registry, Inc.*,
514 F.3d 280 (2d Cir. 2008) ...............................................................1

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005) .............................................................8, 9

*Enfield ex rel. Enfield v. A.B. Chance Co.*,
228 F.3d 1245 (10th Cir. 2000) ..........................................................13

*Fowler v. State Farm Mut. Auto. Ins. Co.*,
759 F. App'x 160 (4th Cir. 2019) ......................................................12

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*,
756 F.3d 204 (2d Cir. 2014) .............................................................6, 8

*Integrity Staffing Sols., Inc. v. Busk*,
574 U.S. 27 (2014).........................................................................3, 15

*Jung v. Gen. Cas. Co. of Wisconsin*,
651 F.3d 796 (8th Cir. 2011) .............................................................13

*Khan v. Yale Univ.*,
27 F.4th 805 (2d Cir. 2022) ......................................................1, 9, 11

*McGrath v. Toys "R" Us, Inc.*,
356 F.3d 246 (2d Cir. 2004) .....................................................1, 8, 12

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
56 F. Supp. 3d 568 (S.D.N.Y. 2014) .................................................13

*Mujo v. Jani-King Int'l, Inc.*,
  13 F.4th 204 (2d Cir. 2021) ..................................................7, 8, 14, 15

*Reich v. N.Y.C. Transit Auth.*,
  45 F.3d 646 (2d Cir. 1995) ...................................................................3

*Sarrazin v. Coastal, Inc.*,
  311 Conn. 581, 89 A.3d 841 (2014) ....................................................10

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Group. PLC*,
  22 F.4th 103 (2d Cir. 2021) ..................................................................2

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
  785 F.3d 189 (6th Cir. 2015) ..............................................................13

*Thompson v. Paul*,
  547 F.3d 1055 (9th Cir. 2008) ............................................................13

*United States v. Defreitas*,
  29 F.4th 135 (3d Cir. 2022) ...........................................................12, 14

*Williams v. Gen. Nutrition Ctrs., Inc.*,
  326 Conn. 651, 166 A.3d 625 (2017) ..................................................10

**Statutes**

Conn. Gen. Stat. § 31-68 ...........................................................................4

Conn. Gen. Stat. § 31-71b .........................................................................4

Conn. Gen. Stat. § 31-72 ...........................................................................4

Conn. Gen. Stat. § 31-76b .........................................................................4

Conn. Gen. Stat. § 51-199b(d) .................................................................12

Fair Labor Standards Act ..................................................................*passim*

Connecticut Minimum Wage Act ...........................................................14

Portal-to-Portal Act .........................................................................*passim*

**Other Authorities**

Conn. Agencies Regs. § 31-60-11 ................................................................4

## I.    INTRODUCTION

Certification of a question of law to a state high court is reserved for "exceptional" circumstances (*McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004)) in which state law is "so uncertain that [this Court] can make no reasonable prediction as to how it would apply in this case[.]" *Khan v. Yale Univ.*, 27 F.4th 805, 818 (2d Cir. 2022) (internal quotation marks and citations omitted). This is not such a case. The central legal question in this appeal is whether the scope of compensable "work" under Connecticut's wage laws is to be interpreted in alignment with the federal Fair Labor Standards Act ("FLSA"), which, since it was amended by the Portal-to-Portal Act ("PTPA") in 1947, has made clear that activities "performed outside the scheduled work time" must be "an integral and indispensable part of the employee's principal activities" in order to be compensable. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008).

Contrary to Plaintiffs-Appellants' ("Plaintiffs") arguments in their appellate brief, the District Court's decision answering that question was grounded in multiple instructive precedents from the Connecticut Supreme Court and Connecticut Appellate Court, as well as clear evidence of the legislative history surrounding the enactment of Connecticut's overtime statute. These include the Appellate Court's recent decision in *Belgada v. Hy's Livery Serv., Inc.*, 220 Conn. App. 102, 297 A.3d 199 (2023), which adopted the FLSA's test for discerning

1

what is compensable "work" for purposes of construing the very statutory provision at issue in this case. *Belgada*, 220 Conn. App. at 121-24, 297 A.3d at 210-212. Simply put, the District Court was not writing on a blank slate.

The Court also should deny Plaintiffs' Motion to Certify because it comes too late. Plaintiffs have waited until the eleventh hour—until after suffering an adverse judgment in the District Court following two years of proceedings, and even after the filing of their appellate brief in this Court—to seek certification. As no fewer than seven federal appellate courts have recognized, such belated bids for certification are heavily disfavored.

At bottom, Plaintiffs' motion identifies no reason why this case is so exceptional as to warrant disruption of the ordinary process of appellate review. To the contrary, this appeal requires the Court to do what it normally does when presented with issues of state law: apply relevant precedents that supply the operative legal principles in order to "predict how [Connecticut's] highest court would resolve" the issues presented. *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Group. PLC*, 22 F.4th 103, 120 (2d Cir. 2021). The Court should deny the Motion to Certify.

## II.   LEGAL AND PROCEDURAL BACKGROUND

In 1947, Congress amended the FLSA via the PTPA to "delineate certain activities which did not constitute work, and therefore did not require

compensation." *Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995). As relevant to this case, the PTPA identified certain activities—described in the statute as activities that are "preliminary to or postliminary to" the performance of the employee's "principal activity or activities"—that are beyond the scope of compensable work because they were "thought to fall outside the conventional expectations and customs of compensation." *Id.* Twenty years later, in 1967, Connecticut enacted its own state-level overtime statute with the express purpose of "mak[ing] Connecticut law coextensive with federal overtime law" and eliminating inconsistency between employers' state and federal overtime obligations. *Belgada*, 220 Conn. App. at 120, 297 A.3d at 210.

In 2014, the Supreme Court of the United States held that the time employees assigned to work at an Amazon warehouse spent to "undergo an antitheft security screening before leaving the warehouse each day" constituted "noncompensable postliminary activities" under the FLSA. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 29, 35-36 (2014).

In 2021, Plaintiffs filed this action on behalf of a proposed class of non-exempt workers at Amazon's Connecticut facilities. A39-49 (Amended Class Action Complaint, the "Complaint"). The Complaint alleged that Plaintiffs were required to undergo mandatory security screenings at the end of their shifts without being compensated for the time. A39-40. Plaintiffs claimed that the time they

3

spent undergoing post-shift security screenings was compensable under Connecticut's wage payment and overtime laws, notwithstanding the Supreme Court's contrary holding under the FLSA in *Busk*. *See* A47-48; Conn. Gen. Stat. §§ 31-68, 31-71b, 31-72, and 31-76b; Conn. Agencies Regs. § 31-60-11.

In December 2022, after the completion of discovery, Amazon moved for summary judgment. A149. Amazon presented the District Court with ample legislative history behind Connecticut's overtime statute. Based on that legislative history, Amazon argued that the Connecticut General Assembly enacted the state's overtime protections in 1967 with the purpose of making Connecticut law coextensive with the existing protections of the FLSA—which necessarily included the 1947 PTPA—and eliminating inconsistencies between federal and state law. *See* D. Ct. Dkt. No. 115 (Amazon's Mem. of Law in Supp. of Mot. for Summ. J.) at 13-20. Consequently, Amazon argued, the fact that Connecticut's overtime statute does not contain explicit language excluding preliminary and postliminary activities from the statute's description of compensable "work" is of no moment in view of the clear evidence of legislative intent to model the state law off of the FLSA (which had incorporated the PTPA 20 years earlier). *See id.* at 20-22 (citing and quoting *In re Amazon.com*, 852 F.3d 601, 610, 612 (6th Cir. 2017)). Under *Busk*, therefore, Plaintiffs' and putative class members' post-shift security

4

screenings were not compensable under Connecticut law, entitling Amazon to summary judgment.  D. Ct. Dkt. 115 at 15-22.

In opposition, Plaintiffs argued, among other things, that the plain language of the illustrative description of "hours worked" contained in Connecticut's overtime statute, Conn. Gen. Stat. § 31-76b(2)(A), was dispositive, and they claimed that the legislative history of Connecticut's wage laws did not evince an intent to enact state-level overtime protections that were coextensive with those under federal law.  *See* D. Ct. Dkt. 119 (Pls.' Op. to Amazon's Mot. for Summ. J.) at 9-20.

On June 20, 2023—after the parties had submitted their summary judgment briefing—the Connecticut Appellate Court issued its opinion in *Belgada*.  *Belgada* concerned the compensability of meal breaks under Connecticut's wage laws, and construed the "hours worked" provision of Conn. Gen. Stat. § 31-76b(2)(A).  *Belgada*, 220 Conn. App. at 115, 297 A.3d at 207.  The Appellate Court in *Belgada* observed that the statute's definition of "hours worked" "does not address what constitutes 'work[,]'" *Belgada*, 220 Conn. App. at 119, 297 A.3d at 211, and concluded that "[w]ithout a definition of work, there is more than one plausible interpretation of its meaning under the statute."  *Id.* at 120.  In view of this statutory ambiguity, the *Belgada* court went on to examine the legislative history of the enactment of Connecticut's overtime statute in 1967 and found that "[t]he

5

legislative history … make[s] clear … that the purpose of the act was to make Connecticut law coextensive with federal overtime law." *Id.* Consequently, and given the fact that "[Connecticut's] appellate courts customarily have looked to federal law when interpreting our analogous state law scheme[,]" *id.* at 124, the Appellate Court adopted the FLSA's test for discerning compensable "work" for purposes of Connecticut's overtime law. *Id.* at 121-24; *id.* at 121 ("We therefore look to decisions of federal courts interpreting 'work' under the FLSA for guidance."). Amazon notified the District Court of the *Belgada* decision on July 5, 2023. A150.

On September 20, 2023, the District Court granted Amazon summary judgment, applying *Belgada*, other decisional authority from the Connecticut Supreme Court, and the legislative history surrounding the enactment of Connecticut's overtime statute. A118-126.

## III. ARGUMENT

The Court should deny Plaintiffs' Motion to Certify for two principal reasons. First, this case does not meet the high bar required for certification. As this Court has explained on multiple occasions, the fact that a state's appellate courts have not decided the precise legal issue presented is not a basis to grant certification of a question of law; indeed, it is precisely this Court's role to "*predict* how the forum state's highest court would decide the issues" before it. *Giuffre*

6

*Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) (quoting

*DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)) (emphasis added).  The

District Court below reached its conclusion after examining established precedent

from the Connecticut Supreme Court and Connecticut Appellate Court instructing

that, in construing Connecticut's wage and hour laws, courts are to look to federal

law interpreting analogous provisions of the FLSA consistent with the General

Assembly's intent to enact state-level overtime protections coextensive with the

FLSA.  A121-24.

Second, Plaintiffs' motion comes too late.  Even though the Connecticut

Supreme Court's procedural rules permit certification of questions of law from

United States District Courts, Plaintiffs never sought certification below despite

ample opportunity to do so.  It is only now, after suffering an adverse judgment

below, that Plaintiffs ask this Court to certify a question of law.  Numerous federal

circuit courts, and courts in this circuit, have observed that such belated and

opportunistic requests for certification should be denied.

Fundamentally, Plaintiffs articulate no reason to treat this case differently

from any other in which this Court is called upon to interpret a state's wage and

hour laws.  *See*, *e.g.*, *Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 214-15 (2d Cir.

2021) (denying plaintiffs' motion to certify questions under Connecticut's wage

and hour laws because authoritative state court decisions provided sufficient

guidance). The Court should therefore deny Plaintiffs' motion and resolve this appeal via the ordinary process of appellate review.

**A.    Certification Is Unwarranted Because the Issues May Be Resolved Through Application Of State Appellate Authority And Legislative History**

As this Court has observed before, "certification is an exceptional procedure, to which we resort only in appropriate circumstances." *McGrath*, 356 F.3d at 250. "Issues of state law are not to be routinely certified to the highest court[] of [a state] … simply because a certification procedure is available." *DiBella*, 403 F.3d at 111 (quoting *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 370 (2d Cir. 1999)); *see also Mujo*, 13 F.4th at 215 ("we resort to certification sparingly, mindful that it is our job to predict how the Connecticut Supreme Court would decide the issues before us") (internal alterations, quotations, and citation omitted). Rather, this Court's role is "to predict how the forum state's highest court would decide the issues before [it]," and consequently certification is unwarranted "where sufficient precedents exist for [it] to make this determination." *DiBella*, 403 F.3d at 111*; see also Giuffre*, 756 F.3d at 209 (concluding that certification was unwarranted even where no state appellate decision had previously construed portion of the statute under review, where there was "ample" precedent interpreting the operative language under New York law).

8

Only if this Court concludes—after consideration of "the [state's] highest court's decisions in related cases," "relevant decisions of the state's lower courts[,]" and decisions from "other jurisdictions"—that Connecticut law is "so uncertain that [it] can make no reasonable prediction as to how it would apply in this case" will the Court "consider certifying" questions of law to the Connecticut Supreme Court. *Khan*, 27 F.4th at 818 (internal quotation marks and citation omitted). Moreover, in "undertak[ing] the imprecise but necessary task of predicting on a reasonable basis" how a state's highest court would resolve an issue, "the language of the state intermediate appellate courts … [is a] helpful indicator[] of how the state's highest court would rule." *DiBella,* 403 F.3d at 112. *See also id.* ("Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (internal quotation marks and citations omitted).

This case does not meet the high bar this Court requires for certification. Simply put, there is more than "sufficient precedent" to decide the central legal question in this appeal, *viz.*, whether Plaintiffs' post-shift security screenings are compensable "work" under Connecticut's wage laws. *DiBella*, 403 F.3d at 111. As Amazon argued and the District Court concluded below, the Connecticut

9

Supreme Court and Appellate Court have consistently held that Connecticut's overtime statute is "nearly identical to" and "indistinguishable from" the FLSA, and have instructed that courts should look to federal case law under the FLSA to construe analogous provisions of Connecticut's wage laws. *See* D. Ct. Dkt. 115 at 13-14; A121-22; *see, e.g.*, *Williams v. Gen. Nutrition Ctrs., Inc.*, 326 Conn. 651, 659, 166 A.3d 625, 630 (2017) (observing that Conn. Gen. Stat. § 31-76c, the state overtime statute, "is nearly identical to the federal overtime statute" and finding "no reason to interpret § 31-76c differently from its federal counterpart"); *Sarrazin v. Coastal, Inc.*, 311 Conn. 581, 596, 89 A.3d 841, 853 (2014) ("The corresponding state statute, § 31–76c, is indistinguishable from 29 U.S.C. § 207(a)(1)[.]"); *Belgada*, 220 Conn. App. at 124, 297 A.3d at 212 ("our appellate courts customarily have looked to federal law when interpreting our analogous state law scheme").

Indeed, the Connecticut Appellate Court's decision in *Belgada* homed in on the very question presented in this appeal: whether Connecticut's wage laws follow the FLSA with respect to the definition of compensable "work." After finding the statute silent on the question, *Belgada* examined the legislative history of the Connecticut overtime statute's enactment and concluded that "the purpose of the act was to make Connecticut law coextensive with federal overtime law." *Belgada*, 220 Conn. App. at 120, 297 A.3d at 210. *Belgada* went on to hold that,

10

for purposes of ascertaining the scope of compensable "work" under Connecticut's overtime law, courts therefore should look to precedent under the FLSA. *Id.* at 120-25. *Belgada* even noted with approval that "[a]t least one court, the United States District Court for the District of Connecticut, already has applied" federal law under the FLSA to an analysis of the scope of compensable work under Connecticut's overtime law. *Id.* at 125 n.18 (citing and quoting *Richardson v. Costco Wholesale Corp.*, 169 F. Supp. 2d 56, 59, 60 & n.1 (D. Conn. 2001)).

As Amazon will argue in its appellate brief, the District Court below correctly concluded that the foregoing authorities—as well as those in other jurisdictions addressing the same question under other states' wage and hour laws[1]—all point in the same direction: to determine whether a particular activity is compensable "work" under Connecticut's minimum wage and overtime laws, courts construe the statute in accord with the FLSA. A120-26. The District Court's judgment was both correct and firmly grounded in well-established case law. There is no need to certify the question of law to the Connecticut Supreme Court.[2]

---

[1] *See* A124-25 (discussing decisions of the Oregon Supreme Court and Supreme Court of Kentucky holding that those states' wage and hour laws incorporated PTPA's exclusion of preliminary and postliminary activities from definition of compensable "work" despite absence of explicit language adopting the PTPA).

[2] Plaintiffs do not actually argue, as *Khan* requires, that Connecticut law is "*so uncertain* that [this Court] can make *no reasonable prediction* as to how it would

**B.  Plaintiffs' Motion Is An Untimely And Transparent Attempt At Forum Shopping**

Connecticut allows United States District Courts to certify questions of law. *See*, *e.g.*, *Cerame v. Lamont*, 346 Conn. 422, 291 A.3d 601 (2023) (answering certified question from the United States District Court for the District of Connecticut); Conn. Gen. Stat. § 51-199b(d) ("The [Connecticut] Supreme Court may answer a question of law certified to it by a court of the United States … ."). Plaintiffs, though, never sought certification in the District Court below.

At least seven federal Courts of Appeals have concluded that motions to certify should normally be denied when the party seeking certification could have, but did not, seek certification until after suffering an adverse judgment.  *See United States v. Defreitas*, 29 F.4th 135, 142 (3d Cir. 2022) ("After all, certification is not an opportunity for a do-over. Requests to certify made by a party only after an adverse decision compel a court to inquire of the party: Why now?"); *Fowler v. State Farm Mut. Auto. Ins. Co.*, 759 F. App'x 160, 166 (4th Cir. 2019) (party's

---

apply in this case."  *Khan*, 27 F.4th at 818 (emphases added).  The most Plaintiffs say in their Motion to Certify is that "the Connecticut Supreme Court *could* disagree with them and … reach the same conclusion that the District Court reached."  Appellant's Mot. to Certify, ECF No. 62 at 15 (emphasis added).  That statement does not come close to demonstrating the "exceptional" circumstances this Court demands for certification.  *McGrath*, 356 F.3d at 250.  If the mere possibility that a state's highest court might *agree* (or disagree) with a decision of a federal court warranted certification, then certification would occur in nearly every case.

failure to seek certification of question of law in the district court "weighs against certification" on appeal of an adverse judgment); *Jung v. Gen. Cas. Co. of Wisconsin*, 651 F.3d 796, 801 (8th Cir. 2011) ("We generally do not allow certification after a case has been decided."); *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015) ("[S]uch certification is disfavored when it is sought only after the district court has entered an adverse judgment … the appropriate time for a party to seek certification of a state-law issue is before, not after, the district court has resolved the issue."); *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision. A party should not be allowed 'a second chance at victory' through certification by the appeals court after an adverse district court ruling."); *Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) ("We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court.") (internal quotation marks and citation omitted); *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977) ("We do not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort."). *See also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 56 F. Supp. 3d 568, 574 (S.D.N.Y. 2014) ("the law is

clear that courts do not look favorably on a party … applying to the state court after failing to persuade the federal court") (internal quotation marks and citations in footnote omitted; alteration omitted).

In sum, Plaintiffs waited until after they received an adverse judgment and filed their appellate brief in this Court before seeking certification. Their motion is nothing more than an eleventh-hour effort at a "do-over." *Defreitas*, 29 F.4th at 142. The Court should deny it for this reason alone.

### C. This Court Does Not Reflexively Certify Questions Of State Wage And Hour Law, And Plaintiffs Identify No Unique Policy Reasons Warranting A Departure From Ordinary Appellate Review

Inasmuch as Plaintiffs purport to argue that the Court should certify their proposed question of law simply because "substantial policy reasons warrant" doing so, ECF No. 62 at 14, they provide no concrete reason why *this* case implicates concerns of any greater importance or significance than any other matter in which federal courts determine employers' obligations under state law. To the contrary, this Court recently declined to certify questions of law to the Connecticut Supreme Court in a case involving the interplay between the state's laws governing franchise agreements, independent contractor status, and the Connecticut Minimum Wage Act prohibitions on unauthorized deductions from wages. *See Mujo*, 13 F.4th at 208-213, 214-16. To be sure, the legal issues in *Mujo*—which raised complex and somewhat novel questions of Connecticut wage and hour law

with potential impacts on many putative employers and employees throughout the state—similarly could have been characterized as "important." This Court, though, determined that it could resolve the merits of the appeal through application of guiding principles articulated in Connecticut appellate case law, and declined the appellants' invitation to certify legal questions to the Connecticut Supreme Court. *Mujo*, 13 F.4th at 214-16. This case, too, may be resolved through the ordinary application of precedent from Connecticut's appellate courts.

### D. Even If Certification Were Proper, Plaintiffs' Proposed Question Is Not

Even if this Court were inclined to certify a question of law to the Connecticut Supreme Court (which it should not), Plaintiffs' proposed "Question for Certification" is improper because it does not accurately convey the District Court's holding in this case. The District Court below did not hold that the Connecticut General Assembly "implicitly" or "silently" enacted legislation. Pls.' Mot. to Certify, ECF No. 62 at 6. Instead, the District Court determined that it was appropriate to apply federal law in construing an undefined statutory term, *viz.*, the "work" that is compensable under Connecticut's wage laws. A122 ("The Court therefore concludes … that it is appropriate to turn to federal precedent, to include *Integrity Staffing*, when deciding whether the time Plaintiffs spent in security screenings is compensable under Connecticut wage laws.").

15

Accordingly, even if this Court were to certify a question of law to the Connecticut Supreme Court, the question presented should be: Under Connecticut law, is time that employees spend undergoing security screening before exiting the employer's premises compensable work?

## IV.  CONCLUSION

For all of the reasons stated herein, Amazon respectfully requests that this Court deny Plaintiffs' Motion to Certify Questions of Law to the Connecticut Supreme Court.

Dated: January 22, 2024                    SEYFARTH SHAW LLP

By: */s/ Daniel B. Klein*
_____
      Daniel B. Klein
      dklein@seyfarth.com
      Alison H. Silveira
      asilveira@seyfarth.com
      Michael E. Steinberg
      msteinberg@seyfarth.com
      Two Seaport Lane, Suite 1200
      Boston, MA 02210-2028
      Telephone: 617-946-4800
      Facsimile: 617-946-4801

Samantha L. Brooks
sbrooks@seyfarth.com
975 F. Street, N.W.
Washington, DC 20004
Telephone: 202-828-3560
Facsimile: 202-641-9209

Attorneys for Defendants-Appellees
*AMAZON.COM SERVICES, LLC,*
*AMAZON.COM.DEDC, LLC and*
*AMAZON.COM, INC.*